**TO BE PUBLISHED IN FEDERAL SUPPLEMENT 2D**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

Eastern District of Kentucky
FILED
AUG 1 6 2006

CIVIL ACTION NO. 2006-38 (WOB)

UNITED RADIO, INC. d/b/a BLUESTAR                PLAINTIFF

VS.                    <u>MEMORANDUM OPINION</u>

RALPH W. WAGNER, JR., ET AL                      DEFENDANTS


This is an action for breach of an employment contract by an employee and his new employer. Related causes of action include misappropriation of trade secrets, tortious interference with contractual relations, et al.

The cause is presently before the court on motions to dismiss for lack of subject matter jurisdiction and, in the alternative, lack of personal jurisdiction over the employee or transfer to the Central District of California.

**FACTS**

The court will state only the facts necessary to the understanding of these motions. The plaintiff is United Radio, Inc. (BlueStar), a Kentucky corporation with its principal place of business in that state. It sells highly technical devices, the purpose of which is to read remotely bar graph codes on products or containers of products.

In January 2004, the plaintiff entered into an employment contract with the defendant, Ralph W. Wagner. Under the contract, Wagner, a citizen and resident of Michigan, agreed to accept employment with the plaintiff. Wagner was to be based at the BlueStar's divisional office in Michigan.

The employment contract was executed by plaintiff in Michigan. It included non-compete, non-disclosure of trade secrets and other standard clauses. It did not include a forum selection clause, but did include a choice of law clause stating Kentucky law would apply to any disputes arising under the contract.

After about two years of employment with plaintiff, Wagner left to accept a job with defendant, Ingram Micro Inc., a competitor of plaintiff. Ingram's principal place of business was in California but, as with his employment with plaintiff, Wagner's duties were to be primarily performed in Michigan.

During his employment with plaintiff, Wagner continued to reside in Michigan, and primarily worked out of plaintiff's divisional office there.

He did, however, make frequent trips to plaintiff's home office in Kentucky, both to give and receive technical training. He was also in continuous e-mail and telephone contact with the home office during his employment seeking technical input in the performance of his duties and other matters. Wagner admits to at least 13 trips to Kentucky during his tenure. He signed contracts

2

for plaintiff in Kentucky. His orders for sales made in Michigan had to be processed through the home office.

## ANALYSIS

Finding the subject matter jurisdiction prong of the defendant's motion to be clearly without merit, the court will proceed directly to the personal jurisdiction prong.

The court notes that defendant Ingram concedes personal jurisdiction over it.

After careful consideration, the court concludes that personal jurisdiction exists over Wagner because of his continual contacts with the home office during his employment. These considerations alone make for a close call. The balance, however, is tipped by the choice of law clause.

The court agrees with Wagner that there were insufficient contacts with Kentucky to give rise to general personal jurisdiction over him.

The prevailing test for specific jurisdiction in the Sixth Circuit can be traced to *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968). Three criteria, each a necessity for specific jurisdiction, are as follows:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant . . . must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

3

*Id.* at 381.

For the first part of the test, matters such as contract negotiations, contemplated future consequences of the employment agreement, the terms of the employment contract and the parties' course of dealing will be considered. *Conti v. Pneumatic Products Corp.*, 977 F.2d 978, 982 (6th Cir. 1992).

The contract was drafted entirely by BlueStar, signed by Wagner in Michigan, and signed by Steven Cuntz, President of United Radio, in Kentucky. The contract contains a Kentucky choice of law clause and states that employment is at will. Regarding course of dealing, Wagner signed contracts while in Kentucky that bound BlueStar to payments or actions in Kentucky. He traveled to Kentucky on several occasions to train BlueStar employees on products that he had purchased on behalf of BlueStar and which they were marketing to clients. His at-will employment status implies no intended future consequences on the part of either party; however, Wagner bound BlueStar to contracts that assume his support to see through the result.

In *Conti*, the court analyzed the following facts: the company did not contact the resident employee in Ohio prior to hiring him; all contact between the company and employee occurred while both were in Florida; and the employee alleged mailing of tickets, employment offer, and other materials by the company to his home in Ohio. *Id.* at 982. The court determined that, even assuming the

mailings, it was not enough to establish personal jurisdiction in Ohio. *Id.*

Though not related to employment, *Gateway Press, Inc. v. LeeJay, Inc.*, 993 F. Supp 578 (W.D.Ky. 1997), can provide some insight into the purposeful availment prong. There, Gateway, a Kentucky company, printed an insert for LeeJay, a Massachusetts buyer, through another company and had communications regarding that project. *Id.* at 579. Thereafter, LeeJay contracted with Gateway for a custom printing job, with printing to be completed in Kentucky and the contract stipulating that Kentucky law would govern. *Id.* at 580.

The court analyzed whether "the nonresident defendant entered into a substantial business contract with a party in the forum." *Id.* at 581. The court determined that LeeJay, through a long business relationship, negotiations, and contract approval, maintained a course of dealing that constituted an ongoing relationship. *Id.* The contract stated that Kentucky law would govern, which the court found relevant though not alone determinative, and supporting of the "inference that LeeJay intended to avail itself of the benefits and protections of Kentucky law." *Id.* LeeJay had a free and intentional involvement with the forum and, therefore, fulfilled the first prong of the test. *Id.*

Wagner's business relationship with BlueStar in Kentucky

5

lasted two years, during which time he had substantial business contact with BlueStar employees, earned a salary paid in Kentucky, signed a contract governed by Kentucky law, bound BlueStar to goods and services in Kentucky, and trained BlueStar employees in Kentucky. These actions can hardly be categorized as random or fortuitous, and thus Wagner has purposefully availed himself of the privilege of acting or causing consequence in Kentucky.

The next prong of the *Southern Machine* test requires that the cause of action arise from the defendant's activities in the forum. The activities do not have to directly result in the cause of action, they must only "have a substantial connection with the defendant's in-state activities." *Southern Machine*, 401 F.2d at 384, n.27.

The causes of action in this case that apply to Wagner are theft and misappropriation of trade secrets, unfair competition, tortious interference with business relationships, conversion of confidential business information and property, and breach of fiduciary duty and duty of loyalty, which all hinge on his alleged breach of his employment contract with BlueStar.

Though the actual employment contract was signed in Michigan, "the place where the contractual obligation was incurred is a factor that courts often deem important, although it cannot normally be determinative." *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1300 (6th Cir. 1989). Wagner's interactions with

BlueStar employees in Kentucky provided him with the business relationships and trade secrets that are the basis of his alleged breach. Confidential business information was likely relayed by him to BlueStar's employees during training in Kentucky. Thus, this requirement of specific jurisdiction is satisfied.

Finally, the acts of the defendant must have a substantial enough connection so as to make the exercise of jurisdiction reasonable. Given the lengthy relationship between Wagner and BlueStar, it is easy to imagine that Wagner could foresee being haled into court here. In *Neal v. Janssen*, 270 F.3d 328 (6th Cir. 2001), where a foreign resident made phone calls and sent facsimiles to plaintiffs in the forum, defrauding them in the sale of their horse, the court found that jurisdiction was reasonable when the defendant had established "a relationship with plaintiffs from which he hoped to profit financially." *Id.* at 333. Wagner had hoped to profit financially from his employment with BlueStar, and thus has fulfilled the final prong of the specific jurisdiction test.

Long-arm cases tend to be fact specific. There are few cases involving analysis of employee contacts with the home office. One that is very close on the facts to the case here is *Production Group Int'l, Inc.*, 337 F. Supp.2d 788, 797-98 (E.D.Va. 2004), where jurisdiction was upheld. Further this contract was to be performed in Kentucky in part. *Cf. Aristech Chemical Intern. v. Acrylic*

7

*Fabricators,* 138 F.3d 624, 629 (6th Cir. 1998).

Even if the above factors were not enough, however, the balance is tilted toward finding personal jurisdiction by the choice-of-law clause. A choice of law provision "though alone insufficient to establish jurisdiction, can reinforce [a] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 723 (6th Cir. 2000) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 482 (1985)) (internal quotations omitted).

## CONCLUSION

In sum, the *Mohasco* factors are met here in that:

1. Wagner purposefully availed himself the privilege of acting in the forum state and causing a consequence there by entering into a contract to be performed in part in Kentucky, engaging in continuous contact with the home office there during his employment, and agreeing that the contract should be interpreted under Kentucky law. Further, he allegedly obtained the confidential information, the use of which is restricted by the contract, from the Kentucky home office.

2. The cause of action arises from Wagner's activities in Kentucky in that competition forbidden by the contract will occur there, and the trade secrets he allegedly is revealing or intends to reveal are owned by the plaintiff, who is domiciled there.

8

3. Because of all of these considerations, the acts of the defendant or their consequences have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable.

With regard to the transfer to California under 28 U.S.C. § 1404(a), the court finds that the balance of equities is in equipoise and that the plaintiff's choice of forum must be honored.

This 16th day of August, 2006.

*William O. Bertelsman*

**WILLIAM O. BERTELSMAN, JUDGE**